# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YIGANG CAI, | ) |
| | ) |
| Plaintiff, | ) No. 20 cv 2642 |
| | ) |
| v. | ) |
| | ) Judge Franklin U. Valderrama |
| NOKIA OF AMERICA CORP., | ) Magistrate Judge Susan E. Cox |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff's Motion to Compel [dkt. 41] is granted in part and denied in part as discussed herein. Defendant must update its discovery responses consistent with this opinion within 14 days of this Order. The parties are ordered to file an updated joint status report on 6/4/21.

**I.**     **Background**

Plaintiff Yigang Cai ("Plaintiff"), a long-time employee of Defendant Nokia of America Corporation ("Defendant" or "Nokia"), was terminated from his employment with Defendant after an article was published on a social medial platform called WeChat in February 2019 in which Plaintiff spoke negatively about the prospects for China's 5G technology capabilities. Plaintiff alleges that China's Ministry of Industry Information Technology ("MIIT") was displeased with Plaintiff's statements – especially because Plaintiff is a Chinese-born American citizen – and contacted Defendant to indicate China's unhappiness with Plaintiff's comments. According to Plaintiff, the team investigating Plaintiff's conduct recommended he be reprimanded, but Marcus Weldon (Defendant's Chief Technology Officer) decided to fire Plaintiff to rid Defendant of an aging employee and maintain a good working relationship with China and the MIIT. Plaintiff contends his termination constituted discrimination on the basis of nationality and national origin in violation of Title VII, and age discrimination in violation of the ADEA. Defendant argues

1

Plaintiff's interview with the WeChat blogger violated the company's social media guidelines, which justified his termination for non-discriminatory reasons. Plaintiff asserts that this proffered reason is pretext. As proof, Plaintiff points to Weldon's BBC interview approximately three months later in which he "blasted 5G technological capabilities in China and elsewhere," which lead to a press release from Nokia distancing the company from Weldon's comments, but did not lead any adverse employment action against Weldon. [Dkt. 41 at 3.]

The parties have engaged in written discovery, including Plaintiff's Requests for Production ("RFPs") and Interrogatories. Defendant objected to several of Plaintiff's discovery requests, and following a meet and confer, the parties were unable to come to an agreement.[1] Plaintiff then filed the instant motion, seeking to compel responses to several of his RFPs and Interrogatories; the Court addresses each of these in turn below.

## II. Requests for Production

### A. RFP 2

Plaintiff's RFP 2 seeks "all documents and communications relating to [Plaintiff's] performance as an employee at Nokia, including without limitation, all formal and informal performance reviews." [Dkt. 41 at 6.] In response, Defendant produced Plaintiff's performance reviews for 2016-2018, and objected to any further discovery on the basis of breadth, arguing that any email Plaintiff sent or received could potentially "relate" to Plaintiff's performance as an employee.

The Court agrees that RFP 2 is written very broadly, but does not believe Defendant has produced all relevant materials within the scope of RFP 2. Plaintiff's performance reviews are

---

[1] Defendant maintains that Plaintiff did not engage in a good faith meet and confer before filing the instant motion. While it appears Plaintiff was very motivated to file this motion, his actions were likely sufficient to satisfy Local Rule 37.2. The Court will not deny the motion on that basis, but does urge both parties to be more patient during the meet and confer process in an attempt to voluntarily resolve discovery disputes before involving the Court.

relevant to the claims and defenses in this case. For example, excellent performance reviews may tend to show that Defendant's proffered reason for terminating Plaintiff's employment was pretextual. Defendant has produced the performance reviews, but the Court does not believe those finished products are the only relevant documents responsive to RFP 2. To the extent there were any communications relating to those performance reviews, any drafts of those performance reviews, or any communications preparing to discuss the performance reviews with Plaintiff, all those communications would be relevant and ought to be produced by Defendant. The Court orders that Defendant produce any documents or communications that relate to Plaintiff's formal performance reviews in response to RFP 2.

**B.     RFP 4**

Plaintiff's RFP 4 seeks "all documents relating to and communications regarding [Plaintiff's] age." Defendant produced documents where Plaintiff's date of birth was recorded in Defendant's systems, and "conducted a good faith search for any responsive documents relating to the investigation of [Plaintiff's] conduct and to those involved in the investigation as well as in the disciplinary action and has found no documents." [Dkt. 43 at 9.]

Both sides are proceeding in an unreasonable fashion. For Plaintiff to seek all documents regarding Plaintiff's age is clearly overly broad – not every document with Plaintiff's date of birth on it will be relevant to his suit. For its part, Defendant's production is far too meager and its search overly constrictive. Limiting Defendant's search to the documents relating to the investigation surrounding Plaintiff's WeChat interview is insufficient. In doing so, Defendant is only searching the documents relating to its proffered non-discriminatory reason to prove it did not discriminate against Plaintiff. Those documents are extremely unlikely to turn up any information regarding Plaintiff's age discrimination claims. This is a violation of the both the spirit and the letter of the Federal Rules of Civil Procedure. Defendant must do a fulsome search of all documents in its

3

possession, custody, or control, not just the documents related to Defendant's investigation of Plaintiff. For example, Plaintiff has noted he went through two different reductions in force during his tenure with Defendant. There may be documents relating to Plaintiff's age in the communications relating to those reductions in force that might show Defendant was aware of and concerned about Plaintiff's age as it related to his employment. Such documents would be relevant to Plaintiff's pretext arguments. Defendant is ordered to expand its search beyond the narrow scope of the aforementioned investigation and conduct a good faith search of all documents and communications in its possession, custody, or control to determine whether there are any documents or communications that relate to Plaintiff's age vis-à-vis his employment status with Defendant.

### C. RFP 5-6

RFPs 5 and 6 are the same as RFP 4, but substituting Plaintiff's nationality and national origin in for his age. Defendant's response is functionally the same as its response to RFP 4. Again, Defendant's response was to provide one document listing Plaintiff's place of birth as China, and to state that the request was too broad and that its review of documents relating to the investigation of Plaintiff's discussion of 5G technology did not reveal any discussion of his nationality or national origin. Nokia once again stands behind its argument that it has produced all of the documents related to the decision to terminate Plaintiff's employment. And once again, that argument fails to appreciate the contours of the claims Plaintiff makes. Nobody denies Defendant's stated reason for investigating Plaintiff and terminating his employment was his violation of the company's social media guidelines. However, Plaintiff's case hinges on proving that the investigation was a subterfuge to conceal Defendant's true reason for terminating Plaintiff – namely, his age, nationality, and national origin. Plaintiff is entitled to all relevant documents that might tend to show that Defendant's investigation was pretextual, and those documents are not

likely to turn up in the narrow universe of documents relating to the official investigation. According to Defendant, RFPs 5 and 6 are too broad because they cover "every employee at Nokia for a period of over five years who might have hypothetically communicated about Cai's nationality or national origin." [Dkt. 43 at 9.] While this is an accurate assessment of what Plaintiff seeks, the Court does not believe it is a persuasive argument that the request is overly broad or unduly burdensome. A simple keyword search should adequately whittle the number of documents down to a manageable number. If Defendant is correct that Plaintiff's nationality and national origin were not relevant to his firing, the number of documents would presumably be vanishingly small. However, any such relevant documents that do exist might well provide evidence of pretext. Even if they do not, Plaintiff is entitled to review such documents and communications to try to prove his claims, and Defendant is obligated to locate and produce them. Defendant is ordered to produce all documents responsive to RFPs 5 and 6.

**D.     RFP 14-20**

Plaintiff's RFPs 14-20 seek all communications between: Defendants and MIIT from February 14, 2020 to the present (#14); Marcus Weldon and MIIT from February 14, 2020 to the present (#15); Shannon Mertens and MIIT from February 14, 2020 to the present (#16); Peter Merz and MIIT from February 14, 2020 to the present (#17); Amitava Ghosh and MIIT from February 14, 2020 to the present (#18); Joe Alesia and MIIT from February 14, 2020 to the present (#19); and NOKIA and MIIT related to 5G technology and/or Huawei Technologies Co., Ltd. (#20). For RFPs 14-19, Defendant states it has searched for communications between the relevant individuals and entities and has found no communications that relate to Plaintiff. For RFP 20, Defendant has produced one internal email from an employee named Yi Ling stating that Defendant "received several inquiries from MIIT leadership regarding Dr. Cai Yigang . . . who recently took an interview with a Chinese social media company (which I wasn't informed) talking about his view

5

on 5G . . . ." [Dkt. 43 at 10.] Defendant inquired with Yi Ling who confirmed that Ling "had no documents regarding the inquiries from MIIT." [Dkt. 43 at 11.] Defendant also objected to these RFPs on the basis of breadth and burden.

Defendant is correct that these RFPs are overly broad. As worded, these RFPs seek all communications regardless of whether they related to Plaintiff in any way. Communications between these individuals and entities that do not relate to Plaintiff are not relevant to the claims or defenses in this suit. On the other hand, communications between those individuals and entities that relate to Plaintiff may contain relevant information and must be produced by Defendant. To the extent Defendant has verified it has searched for communications that relate to Plaintiff and no such documents exist, it has satisfied its obligation. However, the reference in Yi Ling's email to "several inquiries from MIIT leadership" regarding Plaintiff certainly is suggestive of there being more responsive to documents to RFP 14. If Yi Ling is deposed and he identifies communications between MIIT and Nokia/Bell Labs regarding Plaintiff that were not produced, Defendant may face sanctions for failing to produce those communications in response to RFP 14. Because Defendant has stated in a court filing that no such documents exist, the Court will not enter an order compelling those documents, but reminds the Defendant of its duty to supplement its responses in a timely manner under FRCP 26(e) and the penalties for failing to do so pursuant to Rule 37(c)(1). The motion is denied as to RFPs 14-20.

E.   **RFP 28**

Plaintiff's RFP 28 seeks documents and communications relating to Marcus Weldon's BBC interview and Defendant's decision to issue a public statement the following day distancing the company from Weldon's comments in the BBC interview. Defendant has produced the interview and the statement, but no other documents or communications relating to them. Defendant argues such documents would be irrelevant because Weldon is not a valid comparator

6

to Plaintiff.

The Court grants Plaintiff's motion to compel documents under RFP 28. Defendant's assertion that Weldon is not an appropriate comparator can be raised in a dispositive motion or at trial, but that issue is not appropriately decided in a motion to compel. In light of Plaintiff's complaint, documents relating to Weldon's treatment surrounding the BBC interview would be relevant to show he was treated more favorably than Plaintiff. It is not sufficient to produce the final documents; there are likely to be discussions surrounding the interview and Defendant's public statement that will shed light on Weldon's statements to the BBC and the company's reaction to those statements. They might tend to show that the proffered reason for terminating Plaintiff was pretext in light of the company's treatment of Weldon for similar transgressions as those that led to Plaintiff's firing. While Defendant may have many arguments for why such documents have little persuasive or legal value, Plaintiff is entitled to review those documents to attempt to prove his case. Defendant must produce documents responsive to RFP 28.

### F. RFP 33

Plaintiff's RFP 33 seeks Marcus Weldon's "employee file." Defendant stated it does not keep an "employee file." After a meet and confer, Plaintiff explained the type of documents he expected to find in an "employee file," and Defendant agreed to produce documents that would constitute an "employee files" as the parties understood it after the meet and confer. As such, there is not currently ripe discovery dispute as to this matter, and the motion is denied as moot as to RFP 33.

## III. Interrogatories

### A. Number 3

Plaintiff's Interrogatory Number 3 seeks to identify all individuals with knowledge of Plaintiff's performance as an employee and all individuals who participated in Plaintiff's hiring,

retention, promotion, and compensation. Defendant identified three such individuals, but objected on the grounds that it was overly broad and unduly burdensome.

As with the analogous RFP discussed above, Defendant is correct that Interrogatory 3 is overly broad, but nonetheless has not agreed to provide all relevant information in response to Interrogatory 3. The Court orders Defendant to identify all individuals who participated in Plaintiff's formal performance reviews for the five years preceding his termination. Those individuals are likely to have relevant information regarding Plaintiff's pretext arguments. The Court believes that older performance reviews will be too attenuated temporally from the relevant operative facts in this case. Similarly, the Court finds that an open-ended interrogatory for Plaintiff's entire employment history with Defendant is overly broad and disproportionate to the needs of the case. Defendant is ordered to identify "all individuals who participated in [Plaintiff's] hiring, retention, and/or promotion process, and all individuals who participated in the process to determine [Plaintiff's] bonus structure agreements and stock option agreements" in the five years preceding his termination.

### B. Number 4

Interrogatory Number 4 requests that Defendant identify all individuals at Nokia who participated in communications regarding Plaintiff's age, nationality, or national origin. Defendant states it has made a good faith search and is not aware of any such individuals. Provided that Defendant has verified its answers to Interrogatory Number 4, the Court accepts this response. Plaintiff does not find this response credible, but without any evidence Defendant is knowingly withholding evidence, the Court takes its statement in the court filing at face value. As above, Defendant should be aware of its duty to timely supplement its responses and the penalties for failing to disclose information.

### C. Number 7

Interrogatory Number 7 asks for all individuals at Nokia who have communicated with MIIT since February 14, 2019. Defendant objected on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks proprietary and/or trade secret information. The Court agrees it is overly broad, as the interrogatory does not limit the scope of the communications to discussions of Plaintiff. However, any such communications relating to Plaintiff would be plainly relevant and Defendant shall identify individuals who had such communications. Defendant is ordered to identify all individuals at Nokia who communicated with MIIT since February 19, 2019 regarding Plaintiff.

### D. Number 9

Interrogatory Number 9 seeks identification of all people not employed by Nokia who communicated with Nokia about Plaintiff's statements and comments about 5G technology. Defendant has objected on the basis of privilege, proprietary and/or trade secret information, relevance, and disruption to Defendant's customer relationships. In its brief in response to this motion, Defendant does not address this interrogatory at all. The Court overrules Defendants objections. This interrogatory does not seek privileged information; the identities of individuals who spoke with Nokia do not, in and of themselves, divulge legal advice protected by the attorney-client privilege. To the extent that the interrogatory seeks sensitive information, this Court has already entered a confidentiality order that can protect Defendant. Finally, the Court does not believe identifying these individuals will cause a disruption to Defendant's business and Defendant has done nothing to elaborate on that objection. Defendant is ordered to respond to Interrogatory Number 9.

### E. Number 10

Interrogatory Number 10 demands Defendant identify all individuals with knowledge or information about Nokia's relationship with the Chinese Government. Defendant objected on the

basis that the interrogatory is overly broad and unduly burdensome. The Court sustains Defendant's objection. This interrogatory is extremely broad and is unlikely to provide much relevant information. Defendant's relationship with the Chinese government is only relevant to the extent the relationship led to Plaintiff's termination. That information can be gleaned from sources significantly more targeted than those sought in Interrogatory 10. For example, any communications between MIIT and Nokia regarding Plaintiff (*i.e.,* in response to Interrogatory 7) are more likely to produce relevant and admissible evidence that tends to prove Plaintiff's case. The Court denies Plaintiff's motion to compel as to Interrogatory Number 10.

**IV.     Conclusion**

Plaintiff's Motion to Compel [41] is granted in part and denied in part as discussed herein. Defendant must update its discovery responses consistent with this opinion within 14 days of this Order. The parties are ordered to file an updated joint status report on 6/4/21.

Entered: 5/7/2021

U.S. Magistrate Judge, Susan E. Cox